UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DOW CONSTRUCTION, LLC | CIVIL ACTION NO. 20-9 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| BPX OPERATING CO. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM ORDER**

Before the Court is a partial motion to dismiss [Record Document 7], pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant, BPX Operating Company ("BPX"). Plaintiff, Dow Construction, LLC ("Dow"), opposed the motion. [Record Document 10]. BPX filed a reply. [Record Document 11]. According to BPX, the sole legal issue to be decided is "whether the forfeiture penalty set forth in La. R.S. 30:103.2 . . . includes post-production costs, as the term is defined by this Court and in the oil and gas industry." [Record Document 7-1, p. 1]. Because the resolution of this issue may require the Court to decide the threshold issue of whether an operator owes postproduction costs to an unleased owner and because the parties have not fully briefed that issue, BPX's partial motion to dismiss is **DENIED**.

**LOUISIANA FORCED POOLING LAW**

Under Louisiana law, the Commissioner of Conservation may join separate tracts of land into a forced pool unit,[1] in which the mineral interest owners share in the proceeds of the mineral production from the unit. *TDX Energy, LLC v. Chesapeake Operating, Inc.*, 857 F.3d 253, 257 (5th Cir. 2017). The operator of the unit is responsible for drilling the unit and paying out proceeds to

---

[1] Forced pooling "allows the government to authorize a single operator to drill for oil and gas even when all parties possessing oil and gas interests in the drilling area have not agreed to go forward." *TDX Energy, LLC v. Chesapeake Operating, Inc.*, 857 F.3d 253, 256 (5th Cir. 2017).

other interest holders. *Id.* Additionally, the operator is required to share information, upon request, with mineral interest owners who have no lease with the operator, pursuant to Louisiana Revised Statute § 30:103.1.[2] *Id.* at 258. Section 103.1 requires the operator to provide an accounting of costs to ensure the non-operators know what they are getting for their money. *Id.* at 263. Section 103.2 provides that when an operator fails to provide this information, such operator loses the "right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well." La. R.S. § 30:103.2.[3] BPX asks this Court to decide whether post-production costs are included in the forfeiture provision as "costs of the drilling operations."

In the Louisiana oil and gas industry, "[i]t is generally accepted that the production phase of oil and gas operations terminates at the wellhead when the minerals are reduced to possession." *J. Fleet Oil & Gas Corp., L.L.C. v. Chesapeake La., L.P.*, No. 15-2461, 2018 WL 1463529, at *6 (W.D. La. Mar. 22, 2018). Production costs generally include developing, drilling, equipping,

---

[2] Section 103.1 provides in pertinent part:
> A. Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
> (1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.
> (2) After establishment of production from the unit well, quarterly reports which shall contain the following:
> (a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.
> (b) The price received from any purchaser of unit production.
> (c) Quarterly operating costs and expenses.
> (d) Any additional funds expended to enhance or restore the production of the unit well.

La. R.S. § 30:103.1.

[3] Section 103.2 provides:
> Whenever the operator or producer permits ninety calendar days to elapse from completion of the well and thirty additional calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.

La. R.S. § 30:103.2.

completing, and operating the well. *See id.* at *6–9. Post-production costs,[4] on the other hand, "are those costs and expenses incurred after the production has been discovered and delivered to the surface of the earth." *Id.* at *6. These "'subsequent to production' costs generally include those related to taxes, transportation, processing, dehydration, treating, compression, and gathering." *Id.*

## FACTUAL BACKGROUND

BPX[5] is the operator of the HA RA SUE; Nichols et ux. 11H No. 2 well (Serial No. 243945) ("Nichols well"), which is part of a forced pool unit located in Red River Parish, Louisiana. *See* Record Documents 1-2; 7-1; & 10. Dow purports to be an unleased mineral interest owner in the Nichols well. *See* Record Documents 1-2, ¶ 2; 10, p. 11. In its complaint, Dow alleges that it sent a demand to the previous operator, Petrohawk Operating Company ("Petrohawk"), for an accounting of costs, pursuant to Section 103.1. Record Document 1-2, ¶ 6. Dow avers that it proceeded to send a second demand for an accounting of costs after Petrohawk "fail[ed] to properly respond to the Initial Demand." *Id.* ¶ 8. Dow claims that Petrohawk failed to respond to the second demand. *Id.* ¶s 8 & 9. As such, Dow contends that BPX—as Petrohawk's successor-in-interest—has "forfeited any right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well," pursuant to Section 103.2. *Id.* ¶ 9 (internal quotation marks omitted). Additionally, Dow asserts that it was "improperly charged" post-production costs as it relates to the Nichols Well. *Id.* ¶ 10.

---

[4] BPX also refers to post-production costs as marketing costs. *See* Record Document 7-1, p. 3.
[5] Dow claims that Petrohawk Operating Company drilled the Nichols Well, but BPX is a successor-in-interest and the current operator. *See* Record Document 1-2, p. 3 n.3.

## **LAW & ANALYSIS**

**I.      Legal Standard**

BPX invokes Federal Rule of Civil Procedure 12(b)(6) in support of its partial motion to dismiss. In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all of the factual allegations in the complaint in determining whether a plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "A motion to dismiss under [R]ule 12(b)(6) is viewed with disfavor and is rarely granted.*" Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotation marks and citation omitted).

**II.     Analysis**

BPX has moved for partial dismissal, alleging that post-production costs are not included in Section 103.2's forfeiture provision. Record Document 7. BPX presents this as a *res nova* issue because it argues that no Louisiana or federal court has addressed the issue as presented in this case. *See* Record Documents 7-1 & 11. It cites one Louisiana case where the court addressed a similar issue. Record Document 7-1, pp. 4–6. In *XXI Oil & Gas, LLC v. Hilcorp Energy Co.*, the Louisiana

Third Circuit Court of Appeal held that the forfeiture provision "includes both pre-production and post-production costs." 2016-269, p. 7 (La. App. 3 Cir. 9/28/16), 206 So. 3d 885, 890. BPX, however, claims the court "mis-used the term of art 'post-production costs'" because the court was actually discussing drilling and operating costs, which are production costs. Record Document 7-1, p. 5. BPX asserts that it is using the term post-production costs to mean marketing costs, a meaning different than that imposed by the Louisiana court in *XXI*. *See id.*

Dow, on the other hand, argues that *XXI* is directly on point and post-production costs are included in the forfeiture provision if operators can deduct for them. *See* Record Document 10. More importantly, however, Dow asserts that Louisiana Revised Statute § 30:10(A)(3)[6] prevents operators from charging unleased mineral interest owners, such as Dow, any post-production costs. *Id.* at 11. In support, Dow cites to the recent decision of *Johnson v. Chesapeake La., LP*, No. 16-1543, 2019 WL 1301985 (W.D. La. Mar. 21, 2019) (slip copy), where a division of this Court, relying on Section 30:10(A)(3), held that operators cannot charge unleased mineral owners post-production costs. BPX objects to Dow's mention of this case as it is not final and argues that it is outside the scope of the instant motion. Record Document 11, p. 1–4. This Court disagrees with BPX insofar as it asserts that the issues surrounding *Johnson* and Section 30:10(A)(3) are outside the scope of this motion.

Unfortunately, neither party briefed in detail the *Johnson* issue, that is whether Section 30:10(A)(3) prohibits operators from charging post-production costs to unleased parties like Dow.

---

[6] Section 3:10(A)(3) states as follows:
> If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.

La. R.S. § 3:10(A)(3).

BPX's framing of the issue in terms of the forfeiture statute attempts to side-step the *Johnson* issue. At this point in the litigation, this Court believes that it cannot decide whether post-production costs are included in the statutory forfeiture scheme before it decides if the operator can charge those costs to the unleased party in the first place. Thus, the Court has two statutes to address: Section 30:10(A)(3) and Section 30:103.2. Whether these two statutes have separate meanings or whether they overlap is an issue to be resolved after adequate briefing.[7] Therefore, the Court defers ruling at this time on whether post-production costs, as defined by BPX, are included in the forfeiture provision.[8]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that BPX's partial motion to dismiss [Record Document 7] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** this 24th day of November, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

---

[7] The Court would like to make clear that it is casting no view on *Johnson* and whether post-production costs can be charged to unleased mineral owners. Instead, the Court recognizes the complexity of the issue and the importance of the issue to the oil and gas industry. Simply, the Court would like to be fully informed before making a decision that could prove consequential.

[8] Because the Court is not resolving the issue at this time, the Court would like to emphasize that it reserves the right to revisit any issue related to this motion if it proves necessary.