## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

DOW CONSTRUCTION, LLC                          CIVIL ACTION NO. 20-9

VERSUS                                         JUDGE ELIZABETH E. FOOTE

BPX OPERATING CO.                              MAG. JUDGE KAYLA D. MCCLUSKY

### MEMORANDUM RULING

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant BPX Operating Company ("BPX"). Record Document 43. The motion has been fully briefed. In the motion, BPX presents one *res nova* legal issue: whether Plaintiff Dow Construction, LLC's ("Dow") forfeiture claim pursuant to Louisiana Revised Statute section 30:103.2 is subject to a one-year liberative prescriptive period and therefore is prescribed. For the reasons below, the Court holds that Dow's forfeiture claim is subject to a ten-year prescriptive period and thus is not prescribed. As such, BPX's motion [Record Document 43] is **DENIED**.

### LOUISIANA POOLING & UNITIZATION LAW

Under Louisiana law, the Commissioner of Conservation may join separate tracts of land into a single unit in which the mineral interest owners share in the mineral production from the unit. *TDX Energy, LLC v. Chesapeake Operating, Inc.*, 857 F.3d 253, 257 (5th Cir. 2017) (citing La. R.S. §§ 30:9(B) & 30:10(A)(1)). "Unitization enables the Commissioner to authorize an operator to establish an oil and gas drilling unit across multiple tracts of land, even if all owners of oil and gas interests in the drilling unit have not agreed to pool their interests." *B.A. Kelly Land Co., L.L.C. v. Aethon Energy Operating, L.L.C.*, 25 F.4th 369, 374 (5th Cir. 2022). "The designated operator is then charged with drilling within the unit and paying a proportionate share of the proceeds of the production to the owners of mineral interests in the unit." *Id.* at 375.

"In both voluntary and compulsory unitization, well cost disputes arise. When there is an operating agreement [i.e. a contract or mineral lease] among the parties, such disputes are generally addressed in the agreement." *Id.* (citing 1 BRUCE M. KRAMER & PATRICK H. MARTIN, THE LAW OF POOLING AND UNITIZATION § 14.04 (3d ed. 2016)). However, in the forced pooling context,[1] when mineral interest owners have not contracted with the operator, the forced pooling statutory scheme "has to address a number of issues that contracts usually decide, such as how to allocate costs and risk among those holding interests in the oil and gas, and how the operator should provide an accounting of well production and costs to owners of oil and gas interests." *Id.*

Louisiana law requires operators to share information, upon request, with mineral interest owners who have no lease with the operator pursuant to Louisiana Revised Statute section 103.1. Section 103.1 requires the operator to provide an accounting of production and costs to the non-operators who request such information. La. R.S. § 30:103.1. Section 103.2 provides that when an operator fails to timely provide this information, such operator loses the "right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well." *Id.* § 30:103.2. The sole issue in BPX's foregoing motion is whether Dow's section 103.2 forfeiture claim is prescribed.

### FACTUAL BACKGROUND

On January 20, 1989, Dow Mineral & Royalty Company, Inc., executed an oil and gas lease with J.R. Session and Elaine Nichols Session (the "Sessions Lease"). Record Document 23 ¶ 2. In an assignment of rights recorded in the conveyance records on May 22, 2012, Dow acquired the Sessions Lease. *Id.* On September 18, 2008, pursuant to a Commissioner of Conservation Order,

---

[1] Forced pooling is the term often used to describe the situation where the government orders pooling "even when all parties possessing oil and gas interests in the drilling area have not agreed to go forward." *TDX Energy*, 857 F.3d at 256.

"the HA RA SUE Unit was established as a forced pool unit for the Haynesville formation." *Id.* ¶ 3. On October 7, 2011, Petrohawk Operating Company ("Petrohawk")[2] drilled the HA RA SUE; Nichols et ux. 11H No. 2 well (Serial No. 243945) ("Nichols Well"), which is part of the forced pool unit encompassing the Sessions Lease. *Id.* ¶ 4. "The Nichols Well was completed on January 18, 2012, and [it] produced hydrocarbons . . . until January, 2019." *Id.* ¶ 5. BPX is the current operator of the Nichols Well, and at no point has Dow entered into an agreement with BPX.

In its amended complaint, Dow alleges that it sent a demand to Petrohawk's registered agent for an accounting of costs pursuant to section 103.1; the registered agent received the initial request on October 26, 2012. *Id.* ¶ 6. Dow avers that it then sent a second demand for an accounting of costs after Petrohawk "fail[ed] to properly respond to the Initial Demand." *Id.* ¶ 8. Dow claims that Petrohawk's registered agent received this demand on March 18, 2013, but Petrohawk never responded to the second demand. *Id.* ¶¶ 8–9. As such, Dow contends that BPX—as Petrohawk's successor-in-interest—has "forfeited any right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well" pursuant to section 103.2. *Id.* ¶ 9 (internal quotation marks omitted).

Dow, however, did not file suit in Louisiana state court until November 25, 2019. BPX has now filed a motion to dismiss in which it argues that Dow's forfeiture claim under section 103.2 is prescribed. The crux of BPX's argument is that a claim brought pursuant to the forfeiture provision is subject to the one-year prescriptive period for delictual obligations as set forth in Louisiana Civil Code article 3492. Dow counters that a claim under the forfeiture statute is quasi-contractual in nature and therefore is subject to a ten-year prescriptive period pursuant to Louisiana Civil Code article 3499.

---

[2] BPX is the alleged successor-in-interest and current operator. *See* Record Document 23 at 3 n.3.

## LAW & ANALYSIS

### I.     Legal Standard

BPX invokes Federal Rule of Civil Procedure 12(b)(6) in support of its motion to dismiss. In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all of the factual allegations in the complaint in determining whether a plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### II.     Prescription

"In diversity cases such as these, federal courts must apply state substantive law." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Fifth Circuit has directed courts to look to decisions of the Louisiana Supreme Court regarding the same issue. *Id.* (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)). "In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case." *Id.*

Under Louisiana law, "[t]he correct prescriptive period to be applied in any action depends on the nature of the action; it is the duty breached that should determine whether an action is in tort or contract." *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (citations omitted). Causes of actions in Louisiana can generally be divided into the following four categories: offenses (delicts), quasi-offenses (quasi-delicts), contracts, and quasi-contracts. Saul Litvinoff & Ronald J. Scalise, Jr., 5 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 1.6 (2d ed. Nov. 2021 Update). Additionally, "Louisiana law favors redressability," and the "Louisiana Supreme Court has long held that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." *Richard*, 559 F.3d at 346 (internal quotation marks and citation omitted).

The general rule in Louisiana is that personal actions[3] are subject to a liberative prescription of ten years, "[u]nless otherwise provided by legislation." La. Civ. Code art. 3499. Claims that are quasi-contractual in nature, such as a claim for production or the proceeds of the sale of production from a forced pool unit, are subject to the general ten-year period for personal actions. *Wells v. Zadeck*, 2011-1232 (La. 3/30/12); 89 So. 3d 1145, 1149; *Taylor v. Smith*, 619 So. 2d 881, 886–88 (La. App. 3 Cir. 1993). However, a delictual action is subject to a one-year liberative prescriptive period. La. Civ. Code art. 3492. Thus, the dispositive point of contention is whether a forfeiture claim under section 103.2 is quasi-contractual or delictual in nature.

---

[3] "A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess." La. Code Civ. Proc. art. 422. "The legal right that a person has to demand the performance of an obligation is called a personal right." *XXI Oil & Gas, LLC v. Hilcorp Energy Co.*, 2016-269 (La. App. 3 Cir. 9/28/16); 206 So. 3d 885, 891, *writ denied*, 2016-02181 (La. 3/24/17); 216 So. 3d 814 (internal quotation marks and citations omitted).

### III.     Analysis

BPX presents this as a *res nova* issue because no court has considered this specific issue. In arguing for the one-year prescriptive period, BPX contends that in Louisiana, statutory penalties are delictual in nature. In support, BPX analogizes the forfeiture provision to other penalty statutes where courts applied article 3492's one-year prescriptive period. *See DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 2019-01496 (La. 7/9/20); 2020 WL 3867212, at *3–6 (holding that a penalty claim under the Balance Billing Act is delictual); *Babin v. Quality Energy Servs., Inc.*, 877 F.3d 621, 624–27 (5th Cir. 2017) (holding that a penalty claim under the federal Employee Retirement Income Security Act is delictual under Louisiana law). Dow counters that not all penalties are delictual and that a cause of action under the forfeiture statute "is a personal action based on BPX's breach of the obligations in the quasi-contract established by the legislature," and as such, the applicable prescriptive period is ten years. Record Document 48 at 6; *see Smith v. Citadel Ins. Co.*, 2019-00052 (La. 10/22/19); 285 So. 3d 1062, 1067–73 (holding that an insured's bad faith claims against the insurer under La. R.S. § 22:1973 are personal and subject to a ten-year prescriptive period).

"To determine whether a cause of action is tort or contract, Louisiana courts look to the nature of the underlying duty." *Richard*, 559 F.3d at 345 (citation omitted). Here, the underlying duty is to provide an accounting of information to a mineral interest owner who has no contractual relationship with the operator. The nature of the duty derives from the Louisiana forced pooling statutory regime. "As explained above, when an unleased[4] owner's land is forcibly included in a compulsory drilling unit, that owner, who cannot prevent having its land unitized, must and can rely on the statutory scheme for protection of its rights in the absence of a lease or contract with the

---

[4] Unless otherwise noted, this ruling uses the term "unleased" to mean "unleased by the operator."

operator." *B.A. Kelly Land*, 25 F.4th at 379–80 (citations omitted). When the operator has no contract with an interest owner in a compulsory unit, the forced pooling statutory regime establishes a "quasi-contractual relationship," whereby the legislature provides the terms of the contract, such as how to allocate well costs, how to allocate production or the proceeds of production, and how the operator should provide an accounting of production, costs, and revenue. *Wells*, 89 So. 3d at 1149 ("A quasi-contractual relationship is created between the unit operator and the unleased mineral interest owner with whom the operator has not entered into contract," and "Louisiana jurisprudence provides that a claim against the operator of a unit well brought by the owners of unleased mineral interests in the production unit seeking their statutory share of production from the well is grounded in quasi-contract."); *Taylor*, 619 So. 2d at 886–88 (holding that a claim for production or the proceeds of the sale of production from a forced pool unit sounds in quasi-contract and therefore is subject to the ten-year prescriptive period); *see B.A. Kelly Land*, 25 F.4th at 375 (describing that the forced pooling regime must fill in the contractual gap and address "how the operator should provide an accounting of well production and costs"); *see generally* La. R.S. §§ 30:10 & 30:103.1.

In the Court's view, the duty to provide an accounting is an additional term to what the Louisiana Supreme Court has described as a quasi-contractual relationship and is an outgrowth of the operator's duties as a *negotiorum gestor* when it develops and operates the land for the benefit of the mineral interest owners with whom the operator has no contractual relationship. *See Wells*, 89 So. 3d at 1149; *Taylor*, 619 So. 2d at 886–88; *Dow Constr., LLC v. BPX Operating Co.*, No. CV 20-9, 2022 WL 1447595, at *4–6 (W.D. La. May 6, 2022)[5] (holding that the doctrine of *negotiorum gestio*—pursuant to Louisiana Civil Code article 2292, *et seq.*—provides the mechanism for an

---

[5] Record Document 129 at 8–13.

operator to recover post-production costs under La. R.S. § 30:10) (citing generally *Johnson v. Chesapeake La., LP*, No. 16-1543, 2022 WL 989341 (W.D. La. Mar. 31, 2022) and *Self v. BPX Operating Co.*, No. CV 19-0927, 2022 WL 989345 (W.D. La. Mar. 31, 2022)); *see also* La. Civ. Code arts. 2292–95 & 3003 (establishing a fiduciary relationship, whereby the *gestor* must account to the owner); *B.A. Kelly Land*, 25 F.4th at 375. Indeed, the purpose of the accounting and forfeiture provisions is to address the "information asymmetry that arises from the forced pooling of mineral resources when there is no lease or contract between the operator and the owner of the oil and gas interest." *B.A. Kelly Land*, 25 F.4th at 376 (internal quotation marks and citation omitted). "Where, as here, unitization is governmentally instituted, nonoperators, like [Dow], lack access to the data showing the well production and costs in the unit in which they share." *Id.* (internal quotation marks and citation omitted). "It follows, but for the existence of the [quasi-contract] between [Dow] and [BPX], there would be no claim" for accounting and, by extension, forfeiture. *Smith*, 285 So. 3d at 1071 (citation omitted). Because any failure to comply with the reporting requirements in section 103.1 is a breach of a quasi-contractual duty, "it necessarily follows the [forfeiture] cause of action is personal and subject to the ten-year prescriptive period found in La. Civ. Code art. 3499." *Id.*

Although BPX has shown that Dow's forfeiture claim has some similarities to a delictual action, the Court finds that the underlying quasi-contract distinguishes the forfeiture claim from the cases that found certain penalty statutes to be delictual, s*ee DePhillips*, 2020 WL 3867212, at *3–6; *Babin*, 877 F.3d at 624–27, and, instead, puts the forfeiture claim more in line with *Smith*, a case in which the Louisiana Supreme Court applied a ten-year prescriptive period to a penalty statute based on the statutory duty being an outgrowth of an underlying contract. 285 So. 3d at 1073; *see Richard*, 559 F.3d at 346 (holding that a statutory cause of action under Louisiana's insurable

interest statute was more analogous to a claim for unjust enrichment than a tort claim and therefore applied the ten-year prescriptive period).

Furthermore, the Court believes a forfeiture claim and claim for production are sufficiently connected to warrant the same prescriptive period. *See Wells*, 89 So. 3d at 1149; *Taylor*, 619 So. 2d at 886–88. The stated purpose of the forced pooling orders in the statute is to "afford the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense." La. R.S. § 30:10(A)(1)(a). Under the forced pooling regime, the operator is permitted to "withhold out of production an unleased owner's pro rata share of the cost of drilling, completing and operating the well until the well generates enough revenue to cover its cost." *B.A. Kelly Land Co., LLC v. Aethon United BR LP*, 54,115 (La. App. 2 Cir. 9/22/21); 327 So. 3d 1071, 1074 n.2, *writ denied*, 2021-01828 (La. 2/8/22); 332 So. 3d 671 (citing La. R.S. § 30:10) (describing costs)). "After this point, the unleased owner is entitled to 100 percent of the revenue allocable to his tract, net of his share of operating expenses" and, in certain circumstances, post-production expenses. *Id.*; *see XXI Oil & Gas*, 206 So. 3d at 889–90; *see generally Dow Constr.*, 2022 WL 1447595 (Record Document 129).

The forfeiture provision is unique in that it does not provide for a specific monetary penalty but dictates that the operator loses the "right to demand contribution . . . for the costs of the drilling operations." La. R.S. § 30:103.2. In other words, the forfeiture provision entitles the unleased owner to 100 percent of the revenue allocable to its tract without deductions for expenses during the period of faulty reporting.[6] *See Aethon United BR*, 327 So. 3d at 1074 n.2. Thus, a claim for forfeiture is in essence a claim for an owner's share of production without the deduction of costs. *See XXI Oil*

---

[6] However, once the operator corrects the faulty reporting, it may start deducting costs once again. *XXI Oil & Gas*, 206 So. 3d at 890 ("Once the operator or producer complies with the statutory requirement, it would no longer be penalized and could start deducting for the costs.").

*& Gas*, 206 So. 3d at 888 (using stipulated revenue to calculate forfeiture under section 103.2). As the Louisiana Supreme Court has held, a claim for production under the forced pooling regime is subject to a ten-year prescriptive period. *Wells*, 89 So. 3d at 1149; *Taylor*, 619 So. 2d at 886–88. Therefore, it logically flows that a forfeiture claim is subject to the same ten-year prescriptive period. Because Dow filed its claim within the ten-year prescriptive period, BPX's prescription defense must be rejected.

## CONCLUSION

In sum, when making an *Erie* guess, the Court is persuaded that the Louisiana Supreme Court would apply a ten-year prescriptive period to a section 103.2 forfeiture claim. As the Louisiana Supreme Court has stated, a "quasi-contractual relationship" exists between an operator and a mineral interest owner with whom the operator has no contract in a forced pool unit. *Wells*, 89 So. 3d at 1149. The forced pooling regime supplies the terms of the quasi-contract, which includes an accounting obligation. *See B.A. Kelly Land*, 25 F.4th at 375. The forfeiture provision was implemented to address any breach of an operator's accounting obligations and "does not exist separate and apart from" the quasi-contractual relationship. *Smith*, 285 So. 3d at 1073. In short, the statutory obligations "originate and flow from" the aforementioned quasi-contract. *Id.* at 1071 (citation omitted). As such, the Court concludes that Dow's forfeiture claim is governed by the ten-year prescriptive period for personal actions pursuant to article 3499 and therefore is not prescribed.

**THUS DONE AND SIGNED** this 17th day of May, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE